### WESTINGHOUSE ELECTRIC & MFG. CO. v. COLUMBIA METER CO.

(Circuit Court of Appeals, Second Circuit. November 14, 1912.)

#### No. 51.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ELECTRIC METERS.

　　The Davis and Conrad patent, No. 608,842, for improvements in electric meters and motors, claims 9 and 10, as limited by the prior art, *held* not infringed.

Appeal from the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

Suit in equity by the Westinghouse Electric & Manufacturing Company against the Columbia Meter Company. From the decree, complainant appeals. Affirmed.

Kerr, Page, Cooper & Hayward, of New York City (Thomas B. Kerr and Parker W. Page, both of New York City, of counsel), for appellant.

Clifton V. Edwards and Lawrence K. Sager, both of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. This case is sui generis in the difficulties which it represents to the proper understanding of the invention of the patent and the anticipatory devices. Propositions which in an ordinary patent cause would be understood the moment they were stated are here confused by a jargon of terms of art and diagrams which convey no meaning to the uninitiated. This is due largely to the fact that we are dealing with an imponderous, intangible, mysterious fluid which no one has seen and which is known chiefly by the results which it produces. It is also due to obscure drawings and description. Sectional views of an electric meter drawn in black upon white paper convey little information to the lay mind. The description offers no adequate assistance. For instance, the invention is described by referring to "Figs. 1 to 4 of the drawings" shown on three separate sheets, reference being constantly made to parts designated by numerals which appear on some figures and not on others. No information is given as to which figure the reader is to examine, thus adding another element of perplexity. If we had been shown the meter of the Davis and Conrad and Hummel patents, either in operation or at rest, or, if this were impracticable, if models, or at least large diagrams with the parts marked and differently colored, had been presented, it would have enabled us more readily to distinguish the salient features of the inventions. We are expected to understand the working of complicated machinery which we have never seen from the conflicting opinions of experts who differ upon many of the essential features of the methods used and the results accomplished. We mention these facts to emphasize the incongruity of a system which requires the submission of such questions to a tribunal composed wholly of lawyers. If the court were empowered, in exceptional cases, to call to its assistance impartial experts learned in the particular art under discussion, it might furnish a solution of the difficulty. Such a plan has, we understand, worked satisfactorily in other countries.

The patent in suit was granted to Davis and Conrad for improvements in electric meters and motors and relates to the measurement of alternating currents of energy. It describes "means for transforming electrical energy into mechanical energy and to electrical measuring instruments which embody such means and utilize the same for actuating suitable indicating, registering, or recording devices." One of the objects "is to provide a simple and efficient means whereby a shifting magnetic field may be produced and employed for actuating an armature or secondary member having circuits closed upon themselves and located in such magnetic field at a speed which is proportional to the energy in the circuit with which it is connected."

Another object "is to provide a wattmeter for alternating current circuits which shall accurately indicate the true energy supplied to the translating devices of the circuit to which the meter is connected within widely separated limits." The patentees assert that they have devised a simple, compact and cheap motor which is capable of exerting a relatively large starting torque and of running smoothly when put to commercial uses. It may also be used advantageously as a meter-motor.

The core of the primary member is built up of iron plates and is provided at one side with an inwardly projecting pole-piece and at the opposite side with two inwardly projecting pole-pieces. The ends of the two last-mentioned pole-pieces are separated from each other and from the end of the inwardly projecting pole-piece, by air gaps. The plates constituting the magnetizable portion of the core are clamped together rigidly by means of relatively thick face plates, the bolts passing through the plates and the body of the core. Two coils, which in effect may be considered as a single coil, having a large number of turns of relatively small wire, surround the core and are preferably located adjacent to the pole-pieces. These coils are connected across an alternating current circuit, the energy of which it is desired to measure. The inwardly projecting pole-piece is designed to be magnetized by currents proportional to the current delivered to the working current. "Since the coils are wound to produce a magnetic flux in the same general direction at any given instant, it obviously follows that the two poles adjacent to the gap 6 are of opposite sign." The specification also states that the pole-piece 2 is shown surrounded by a coil "therefore serving to make the pole-piece 2 an intermediate pole." '

The patentees describe at great length the operation of the meter resulting in the alternate shifting of the magnetic field. The specification says:

"This alternate shifting of the effective resultant flux from one side to the other of the air-gap 5 by reason of the alternate reinforcement and opposition of the fluxes at these two sides will obviously be at a maximum when there is a phase difference of ninety degrees between the shunt and series current, and this resultant shifting field will decrease in strength and duration as the phase angle between the two currents decreases until the two currents are in stop, when the effective resultant field will be mainly or wholly located at one side of the air-gap 5. Under this condition the resultant flux will be alternately reversed in direction, but will not shift to the other side of the air-gap, and hence there will be no rotation of the disk."

The claims in issue are as follows:

"9. In a wattmeter for alternating-current circuits, a laminated core having two air-gaps substantially at right angles to each other, in combination with a closed circuit armature located partially in one of said air-gaps, shunt-coils constructed and arranged to produce a strong magnetic flux across the other air-gap and a relatively weak flux through the armature, and a series coil arranged to produce a magnetic flux through the armature and through one or both of the shunt-coils whereby a shifting field is produced and the desired relation between the shunt-current and the impressed electro-motive force is maintained.

"10. An alternating-current motor having a rotatable closed-circuit secondary member and a primary member comprising a shunt-winding at one side of the secondary member, a series winding at the other side, and a core for said windings, said core and windings being so constructed and arranged that only a portion of the shunt-flux passes through the secondary member and the entire series flux passes through said member and threads all or a part of the shunt-winding."

Judge Hand found that the British patent to Hummel No. 543, accepted August 15, 1896, is "a complete anticipation of the defendant's meter." The Davis and Conrad patent is dated August 9th, 1898, two years after the Hummel patent. We understand Judge Hand to hold

not that the Davis and Conrad claims are necessarily anticipated by Hummel, but that the defendant cannot be held as an infringer for using a wattmeter for alternating currents found in the prior art. If the claims are construed to cover the defendant's structure, they must also cover Hummel's structure. If, on the other hand, they are construed so as to avoid Hummel, they are not broad enough to include the defendant.

The construction and operation of the Hummel meter and that of the patent in suit seem very similar to the layman uninitiated in the mysteries of the art. The principal difference is, apparently, that in the former the rotating element is a cylinder and in the latter it is a disc. Both operate in substantially the same way and accomplish the same result. They have long been recognized as equivalents in the art. The record shows several instances where they have been used interchangeably. Thus in the Blathy patent of March, 1890, it is stated that "instead of a disc any other rotating body may be used— as, for instance, a hollow cylinder."

Hummel's invention relates to alternating current meters, his chief object being to render his meter available when it is desired to measure the energy of the current in electrical circuits having a high self-induction. He points out that existing meters are not suited for this purpose because they fail to take into account the difference in phase, and this difficulty he proposes to remedy by producing the difference of phase of 90 degress in the magnetic circuit instead as theretofore in the electrical circuit. "I do this," he says, "by influencing the said magnetic circuit by means of two electric circuits or coils instead of merely energizing it by a single circuit or coil as heretofore." He describes the various figures attached to his provisional specification and concludes his complete specification as follows:

"The energy of the motor portion of the meter may be consumed in any desired manner, as, for instance, by means of vanes or a paddlewheel or by means of a damping or deadening disc rotating between the permanent magnets. For this purpose there may however be employed the damping effect experienced by the metallic bell in rotating within a powerful shunt-field $m'm'm'$. In addition to the employment of this invention in meters on the Ferrare or Blathy principle, it may also be employed with advantage generally in all cases where it is desired to produce two current circuits with any desired differences of phase—for example, in phase indicators, and in all instruments in which a determined magnetic difference of phase is to be produced."

It will serve no useful purpose, even if we were able to do so, to follow counsel and experts through the maze of contradictory assertions and conclusions drawn from the descriptions and drawings of the Davis and Conrad and Hummel patents; it is sufficient to say that we agree with Judge Hand in his conclusion and, generally, in his reasoning that the patent in suit is anticipated by Hummel unless the claims be so limited as not to include the defendant's meter. It is true that Hummel describes three cores and claims 9 and 10 of the patent in suit describe a single core. One of the elements of claim 9 is "a laminated core having two air-gaps substantially at right angles to each other." Claim 10 has, as one of its elements, "a core for said

windings being so constructed and arranged that only a portion of the shunt-flux passes through the secondary member and the entire series flux passes through said member and threads all or a part of the shunt-winding."

It may be that there is a patenable differentiation between Hummel's three cores and the single core of Davis and Conrad. This distinction does not, however, aid the complainant, for the reason that the defendant does not use the Davis and Conrad core. In other words, the claims are saved from anticipation by limiting them to a combination which the defendant does not use. We incline to the opinion that Hummel discloses the same improvements as those described in the Davis and Conrad patent and that the dissimilarities are such as would naturally occur when the difference in language, nationality and environment are considered.

The two inventors accomplish the same result in substantially the same manner. The language of the claims in issue clearly calls for a unitary magnetic structure. Claim 9 has as one of its elements "a laminated core—having two air-gaps substantially at right angles to each other." The defendant's expert asserts that, with the single exception of Hookham, none of the meters of the prior art has a unitary magnetic structure; being like the defendant's in that respect. The air-gaps "substantially at right angles to each other" are shown in the Hummel patent. The second element of the claim, "a closed circuit armature located partially in one of said air-gaps" and, indeed, all of the remaining elements, are found in the Hummel and Raab patents. Claim 10 covers a unitary magnetic structure and is substantially a repetition of claim 9. Both claims are limited to this unitary structure on which the shunt-coil and series coil of the alternating circuit are wound. In the defendant's meter there is no unitary magnetic structure such as is shown and described in the patent. As shown in the drawing of the Columbia meter the shunt-coils are wound around two magnetic cores and the series coils are wound around two other separate and distinct magnetic coils. In fact, the single structure of the description and claims is one of the principal features which differentiates the Davis and Conrad meter from the prior art. It may be valuable but defendant does not use it.

In short, it is not necessary in this action to hold the Davis and Conrad claims invalid; there may be patentable novelty in the precise form of meter described and claimed by them, but these claims cannot be expanded to cover a meter which does not employ these features.

We cannot agree with the contention that the word "core" in the claims should be construed as meaning "iron disposed in any convenient manner to comply with the description in other respects and obtain the result sought." These patentees were entering a field which was already occupied and were entitled to a monopoly of what they had contributed to the art but nothing more. Besides, as already pointed out, if the language quoted were read into the claims, they would be anticipated by the prior art.

The decree is affirmed.